

1  Patrick Fredette, # 207284
   McCormick, Barstow, Sheppard,
2  Wayte & Carruth LLP
   1600 Scripps Center
3  312 Walnut Street
   Cincinnati, OH 45202
4  Telephone: (513) 762-7520
   Facsimile: (513) 762-7521
5
   Jay A. Christofferson, # 203878
6  McCormick, Barstow, Sheppard,
   Wayte & Carruth LLP
7  P.O. Box 28912
   5 River Park Place East
8  Fresno, CA 93720-1501
   Telephone: (559) 433-1300
9  Facsimile: (559) 433-2300

10 Attorney for Plaintiffs
   Liberty Surplus Insurance Corporation
11 Liberty Insurance Underwriters, Inc.

12                UNITED STATES DISTRICT COURT

13        CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

14

15 LIBERTY SURPLUS INSURANCE          Case No. CV12- 00900RGK (SPx)
   CORPORATION., a New Hampshire
16 corporation; LIBERTY INSURANCE     **COMPLAINT FOR**
   UNDERWRITERS, INC., an Illinois    **DECLARATORY JUDGMENT AND**
17 corporation,                       **REIMBURSEMENT OF NON-**
                                      **COVERED EXPENDITURES**
18              Plaintiffs,
                                      **(DEMAND FOR JURY TRIAL)**
19 v.

20 LEDESMA & MEYER
   CONSTRUCTION COMPANY, INC.,
21 a California corporation; JOSEPH
   LEDESMA, an individual; KRIS
22 MEYER, an individual;

23              Defendants.

24

25

26

27

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
P.O. Box 28912
FRESNO, CA 93729-8912

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT OF EXPENDITURES

(SPACE BELOW FOR FILING STAMP ONLY)

FILED
CLERK, U.S. DISTRICT COURT

FEB - 1 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

COPY

Liberty Surplus Insurance Corporation ("LSIC") and Liberty Insurance Underwriters, Inc. ("LIUI"), by and through counsel, state as follows in relation to their Complaint against Ledesma & Meyer Construction Company, Inc.; ("Ledesma Company"); Joseph Ledesma; and Kris Meyer:

## THE PARTIES

1.     LSIC is an insurance corporation organized and existing under the laws of the State of New Hampshire, with its principal place of business in Boston, Massachusetts.  LSIC conducts business in the State of California as a surplus lines insurer.

2.     LIUI is an insurance corporation organized and existing under the laws of the State of Illinois, with its principal place of business in New York, New York. LIUI conducts business in the State of California as an excess insurer.

3.     Based upon information and belief, Ledesma Company is a corporation organized and existing under the laws of the State of California with its principal place of business in the State of California.

4.     Joseph Ledesma is an individual, and based upon information and belief, is a citizen of California and an owner and officer of Ledesma Company.

5.     Kris Meyer is an individual, and based upon information and belief, is a citizen of California and an owner and officer of Ledesma Company.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 (a), as diversity of citizenship exists between LSIC and LIUI on the one hand and all Defendants on the other, and the amount in controversy exceeds $75,000.00.

7.     This Court has personal jurisdiction over Ledesma Company, Joseph Ledesma and Kris Meyer, as each of them are domiciled within the State of California.

8.     Venue is appropriate pursuant to 28 U.S.C. §1391(a) because Ledesma

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
P.O. Box 28912
Fresno, CA 93729-8912

Company resides within this District; upon information and belief, Joseph Ledesma and Kris Meyer reside within this District; and, upon information and belief, a substantial portion of the events or omissions giving rise to the request for declaratory judgment and reimbursement took place within this District.

9. The Court may declare the rights and other legal relations of LSIC and LIUI, on the one hand, and Ledesma Company, Joseph Ledesma, and Kris Meyer, on the other hand, pursuant to 28 U.S.C. §2201 because an actual controversy exists between them within the jurisdiction of the Court.

## BACKGROUND

A. **The Underlying Action**

10. On or about May 20, 2010, Ledesma Company, Ledesma & Meyer Development, Inc., along with the San Bernardino County Unified School District ("SBCUSD"), Cesar Chavez Middle School, and individuals Ionne Barnes-Joshua, and Darold Hecht were named in an underlying action styled *Jane JS Doe, et al. v. Ledesma & Meyer Constr. Co., Inc., et al.*, San Bernardino County Superior Court Case No. CIVDS 1007001 (the "*Doe*" action"). On or about October 1, 2010, the Complaint in the *Doe* action was amended to remove Cesar Chavez Middle School from the action and add Joseph Ledesma as a defendant. The Complaint was further amended on or about September 12, 2011, to make Jane JS Doe ("Doe") the only plaintiff, to add Kris Meyer as a defendant, and to remove Ledesma & Meyer Development, Inc. from the action. A true and correct copy of the Second Amended Complaint ("SAC") in the *Doe* action is attached hereto as Exhibit "A."

11. The SAC in the *Doe* action alleges that Ledesma Company was engaged in a construction project for SBCUSD on the campus of Cesar Chavez Middle School in San Bernardino, California, in 2006 (the "Project"). The SAC further alleges that Darold Hecht ("Hecht") was an employee of Ledesma Company in 2006 and was assigned to work as a supervisor on the Project prior to the beginning of the 2006-07 school year.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
P.O. Box 28912
FRESNO, CA 93729-8912

2

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT OF EXPENDITURES

12.     The SAC alleges that Hecht had been a registered sex offender in the State of California before being hired and placed by Ledesma Company, Joseph Ledesma, and Kris Meyer on the Project, and that Ledesma Company, Joseph Ledesma, and Kris Meyer had either knowledge of his previous offenses or failed to use reasonable care to discover his previous offenses.

13.     The SAC alleges that after the school year began in August 2006, Hecht would often talk to Doe on the Cesar Chavez Middle School campus.  The SAC further alleges that beginning in October 2006, Hecht began giving Doe rides to and from school, and that during these rides Hecht sexually abused Doe. According to the SAC, Hecht's sexual abuse of Doe took place during the months of October and November of 2006.

14.     According to the SAC, Doe told her parents about her past sexual contact with Hecht in October 2008, who in turn notified law enforcement.  Hecht was subsequently arrested, convicted and sentenced to 24 years in prison in June 2009.

15.     The SAC enumerates 12 causes of action variously against Ledesma Company, Joseph Ledesma, Kris Meyer, SBCUSD, Ionne Barnes-Josha, Hecht and unidentified John Does.  As to Ledesma Company, Plaintiff alleges negligent hiring and retention of Hecht; negligent supervision of Hecht; and negligence based on the allegation that Ledesma Company "knew or had reason to know" that Hecht "was a registered sex offender" and nevertheless placed him on the Project in proximity to students.

16.     As to Joseph Ledesma and Kris Meyer, Plaintiff alleges negligence based on the allegation that they directly participated in Ledesma Company's decision to hire and place Hecht on the Project despite having "actual knowledge" that Hecht was a registered sex offender.

17.     The SAC alleges that Doe was damaged by the *Doe* Defendants in an amount not less than $5 million for each cause of action.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
P.O. Box 28912
FRESNO, CA 93729-8912

3

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT OF EXPENDITURES

18.    LSIC is currently providing a defense to Ledesma Company, Joseph Ledesma, and Kris Meyer in the *Doe* action under a reservation of rights.

**B.    The LSIC and LIUI Policies**

**The LSIC Policy**

19.    LSIC issued to Ledesma Company Commercial General Liability Policy No. DGL-SF-184779-016, effective June 1, 2006 to June 1, 2007 (the "LSIC policy").

20.    The LSIC policy contains the following provisions:

**SECTION I – COVERAGES**

**COVERAGE A.    BODILY INJURY . . . LIABILITY**

**1.    Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" … to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" … to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

. . .

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" . . . is caused by an "occurrence" that takes place in the "coverage territory"; and

\*        \*        \*

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
P.O. Box 28912
Fresno, CA 93729-8912

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT OF EXPENDITURES

**SECTION II – WHO IS AN INSURED**

1.      If you are designated in the Declarations as:

. . .

d.      An organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

\*      \*      \*

**SECTION V – DEFINITIONS**

. . .

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful condition.

\*      \*      \*

ii.     **The LIUI Policy**

21.     LIUI issued to Ledesma Company Commercial Umbrella Policy No. LQ1-B71-185256-016, effective June 1, 2006 to June 1, 2007.

22.             The LIUI policy contains the following provisions:

**INSURING AGREEMENTS**

I.      **COVERAGE**

5

We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "Insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere. The amount we will pay for damages is limited as described below in the Insuring Agreement Section II. LIMITS OF INSURANCE

**II.   LIMITS OF INSURANCE**

. . .

E.   If the applicable Limits of Insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the "Insured" are reduced or exhausted by actual payment of one or more "claims," subject to the terms and conditions of this policy, we will:

1.   in the event of reduction, pay in excess of the reduced underlying Limits of Insurance, or:

2.   in the event of exhaustion, continue in force as "underlying insurance," but for no broader coverage than is available under this policy.

. . .

G.   Retained Limit

We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

1.    the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period;

\*    \*    \*

## V.   DEFINITIONS

. . .

C.    "Bodily injury" means physical injury, sickness, or disease, including death of a person. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person.

D.    "Claim" means any demand for monetary damages upon an "Insured" resulting from a covered "occurrence."

. . .

F.    "Insured" means each of the following, to the extent set forth:

. . .

5.    Any person or organization, other than the Named Insured, included as an additional "Insured" by virtue of an "insured contract," and to which coverage is provided by the "underlying insurance," and for no broader coverage than is provided by the "underlying insurance" to such additional "Insured".

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
P.O. Box 28912
Fresno, CA 93729-8912

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT OF EXPENDITURES

6.      Any of your partners, executive officers, directors, or employees but only while acting within the scope of their duties.

. . .

J.     "Occurrence" means:

1.      as respects "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

. . .

O.     "Underlying insurance" means the insurance coverage provided under policies shown in the Schedule of Underlying Insurance, or any additional policies agreed to by us in writing. It includes any policies issued to replace those policies during the term of this insurance that provide:

1.      at least the same policy limits; and

2.      Insurance for the same hazards, except as to any modifications which are agreed to by us in writing.

\*　　　\*　　　\*

## VI.   CONDITIONS

. . .

J.     Other Insurance

If other insurance applies to a loss that is also covered by this policy, this policy will

8

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
P.O. Box 28912
Fresno, CA 93729-8912

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT OF EXPENDITURES

apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance.

However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

\*       \*       \*

23.     Ledesma Company, Joseph Ledesma, and Kris Meyer contend the *Doe* action is covered under the terms of the LSIC and LIUI policies. LSIC and LIUI dispute the contentions of Defendants, and have reserved their rights with respect to the *Doe* action. There is a justiciable controversy between Ledesma Company, Joseph Ledesma, and Kris Meyer, on the one hand, and LSIC and LIUI, on the other.

## COUNT I – DECLARATORY RELIEF

24.     LSIC and LIUI incorporate the averments contained within paragraphs 1 through 23 above as if fully set forth here.

25.     LSIC and LIUI contend the "bodily injury" alleged in the *Doe* action was not caused by an "occurrence," and thus the LSIC and LIUI policies are not triggered on behalf of Ledesma Company, Joseph Ledesma, and Kris Meyer. LSIC and LIUI therefore have no duty to defend or indemnify Ledesma Company, Joseph Ledesma, and Kris Meyer in the *Doe* action. Ledesma Company, Joseph Ledesma, and Kris Meyer disagree, and contend they are entitled to coverage under the LSIC and LIUI policies for the *Doe* action.

26.     An actual and justiciable controversy has thus arisen between LSIC and LIUI, on the one hand, and Ledesma Company, Joseph Ledesma, and Kris Meyer, on the other hand. The controversy is ripe for resolution through a declaratory judgment, which will afford complete relief between the parties.

## COUNT II – REIMBURSEMENT OF DEFENSE FEES AND COSTS

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT OF EXPENDITURES

**IN THE *DOE* ACTION**

27.     LSIC incorporates the averments contained within paragraphs 1 through 26 as if fully set forth here.

28.     LSIC is currently providing a defense to Ledesma Company, Joseph Ledesma, and Kris Meyer in the *Doe* action, pursuant to a reservation of rights. The reservation of rights reserved on grounds that included a right to recover from them all defense fees and costs incurred for uncovered claims and damages.

29.     The *Doe* action is not covered under the terms of the LSIC policy. LSIC is entitled to the reimbursement of defense fees and costs incurred in defending Ledesma Company, Joseph Ledesma, and Kris Meyer in the *Doe* action in the amount proven at the time of trial.

30.     The amount of defense fees and costs incurred by LSIC to date exceeds the jurisdictional limit of this Court, and is continuing to be incurred by LSIC.

**PRAYER FOR RELIEF**

WHEREFORE, as to Counts I and II, LSIC and LIUI respectfully requests the Court:

A.     Adjudicate and determine the rights of the parties under the LSIC and LIUI policy as set forth herein;

B.     Find and declare that, with respect to Count I, that LSIC and LIUI have no obligation to defend or indemnify Ledesma Company, Joseph Ledesma, and Kris Meyer in relation to the *Doe* action under the LSIC and LIUI policies, and that LSIC and LIUI are thus entitled to judgment in their favor;

C.     Find and declare that, with respect to Count II, Ledesma Company, Joseph Ledesma, and Kris Meyer are obligated to reimburse LSIC for all defense fees and costs incurred by LSIC in providing a defense to

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
P.O. Box 28912
FRESNO, CA 93729-8912

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT OF EXPENDITURES

1    them in the *Doe* action;

2    D.    Grant LSIC and LIUI any and all such further relief that this Court

3    may deem just and equitable.

4

5    Dated:    February 1, 2012              McCORMICK, BARSTOW, SHEPPARD,
                                             WAYTE & CARRUTH LLP
6

7    By:_____
                                             Patrick Fredette
8                                            Jay Christofferson
                                             Attorney for Plaintiffs
9                                            Liberty Surplus Insurance Company
                                             Liberty Insurance Underwriters, Inc.
10

11                    **DEMAND FOR JURY TRIAL**

12    Plaintiff hereby demands a jury trial as provided by Rule 38(b) of the Federal

13    Rules of Civil Procedure.

14

15    Dated:    February 1, 2012              McCORMICK, BARSTOW, SHEPPARD,
                                              WAYTE & CARRUTH LLP
16

17    By:_____
                                              Patrick Fredette
18                                            Jay Christofferson
                                              Attorney for Plaintiffs
19                                            Liberty Surplus Insurance Company
                                              Liberty Insurance Underwriters, Inc.
20

21    52485/00055-1613280.v1

22

23

24

25

26

27

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
P.O. BOX 28912
FRESNO, CA 93729-6912

11

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT OF EXPENDITURES

EXHIBIT "A"

50131-34 CT (CAL)

URTNOWSKI & ASSOCIATES, P.C.
J. Brian Urtnowski (CSB117720)
Lisamarie Graham (CSB 252827)
18301 Von Karman Avenue, Suite 200
Irvine, California 92612
(949) 752-0010
(f) (949) 752-9320
brianu@jbulaw.net

Attorneys for Plaintiff Jane JS Doe,

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**COUNTY OF SAN BERNARDINO - CENTRAL COURT**

**JANE JS DOE**, an individual, by and through her guardian ad litem, Carrie S.

Plaintiff,

vs.

**LEDESMA & MEYER CONSTRUCTION COMPANY, INC.**, a California corporation; **DAROLD HECHT**, an individual; **SAN BERNARDINO CITY UNIFIED SCHOOL DISTRICT**, a governmental entity; **IONNE BARNES-JOSHUA**, an individual; **JOSEPH LEDESMA**, an individual, **KRIS MEYER**, an individual, and **DOES 3 through 100**, Inclusive;

Defendants.

**AND RELATED CROSS-COMPLAINT.**

**CASE NO. CIVDS1007001**

**SECOND AMENDED COMPLAINT FOR:**

**1. NEGLIGENCE PER SE**
**2. NEGLIGENT HIRING/ RETENTION**
**3. NEGLIGENT SUPERVISION**
**4. NEGLIGENCE**
**5. NEGLIGENT SUPERVISION - *EDUCATION CODE* §44807**
**6. VIOLATION OF *EDUCATION CODE* §§ 45125.1 and 45125.2**
**7. SEXUAL BATTERY - *CIVIL CODE* § 1708.5**
**8. SEXUAL ABUSE OF MINOR - *PENAL CODE* § 288a**
**9. UNLAWFUL SEXUAL INTERCOURSE WITH PERSON UNDER 18 - *PENAL CODE* § 261.5**
**10. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**12. VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**14. BATTERY**

## CASE INTRODUCTION

1. During 2006, Jane Doe, then a thirteen year old female eighth grade student at Cesar Chavez Middle School in San Bernardino, California, was repeatedly raped and sexually abused by a thirty-four year old twice convicted and registered sex offender who was employed to work on the school campus. The registered sex offender, defendant Darold Hecht, was the brother-in-law of Joseph Ledesma - an owner of Ledesma & Meyer, a construction company specializing in the construction of school facilities and campuses in San Bernardino County and throughout the State. Ledesma & Meyer was hired by the San Bernardino School District to perform construction work lasting several months on the campus of Cesar Chavez Middle School while school was in session *and while knowing that students would be present*. Ledesma & Meyer sent its employee (and its owner's brother-in-law), registered sex offender Darold Hecht, to the school to supervise and to work on the school construction project with the full knowledge that Darold Hecht had been convicted of raping and sexually violating young girls on two previous occasions. Cesar Chavez Middle School and the San Bernardino School District failed to investigate Darold Hecht and permitted this twice convicted and registered sex offender to have unfettered access to the school campus and to the students enrolled at Cesar Chavez Middle School including, Jane Doe, thus subjecting Jane Doe and all of the students enrolled at Cesar Chavez Middle School to the dangers of a known registered sex offender lurking on the campus with the full permission of the school administration - even though this sex offender was barred by law from being on this campus.

2. In August 2006, registered sex offender Darold Hecht began to speak to Jane Doe daily on the campus of Cesar Chavez Middle School in front of teachers, school personnel and school security guards in an aggressive campaign of seduction. Thirty-four year old registered sex offender Hecht would even follow thirteen year old Jane Doe to class and wait for her in full view of school faculty and administrators, yet Cesar Chavez Middle School, its administrators, its faculty, its security personnel and the San Bernardino School District,

1    failed to take any steps to protect Jane Doe. In October 2006, registered sex offender Darold

2    Hecht began to repeatedly rape, batter and sexually abuse Jane Doe after picking her up at

3    the school bus stop before and after school. During the same time period that he was sexually

4    abusing thirteen year old Jane Doe, registered sexual offender Darold Hecht, who was

5    married with children, was also engaging in an illicit sexual relationship with a Cesar Chavez

6    Middle School registrar, Jennifer Hayes, who was married to another man.  Defendant

7    Darold Hecht impregnated the Cesar Chavez Middle School registrar who gave birth to a

8    child, and still, the school district failed to take any steps to protect Jane Doe, or any of their

9    other students, from this sexual predator.

10

11  3.    On October 23, 2006, a teacher at Cesar Chavez Middle School formally advised the school

12       administration that defendant Darold Hecht was sexually abusing Jane Doe. The San

13       Bernardino City Unified School District Police Department assigned officer Ionne Barnes-

14       Joshua to investigate the sexual abuse of Jane Doe by registered sex offender Darold Hecht.

15       However, officer Barnes-Joshua, the School Police, and the school administration failed to

16       properly investigate the report of sexual abuse and covered up the same by failing to notify

17       the parents of Jane Doe that their daughter had been raped and subjected to sexual abuse and

18       battery by registered sex offender Darold Hecht who was working on the campus of Cesar

19       Chavez Middle School. Despite being aware that Darold Hecht was a registered sex offender

20       working on the campus of Cesar Chavez Middle School, and despite being aware that Darold

21       Hecht was engaged in an illicit sexual relationship with a school secretary, the school, the

22       school district and the School Police provided no protection to thirteen year old Jane Doe and

23       dropped the investigation.  As a result of the school's, the school district's, the School

24       Police's, and officer Barnes-Joshua's failure to notify Jane Doe's parents, and their failure

25       to protect Jane Doe from further abuse, thirty-four year old registered sex offender Darold

26       Hecht continued to rape and sexually abuse thirteen year old Jane Doe through November

27       2006. In 2009, registered sex offender Darold Hecht was convicted of these rapes and sexual

28       abuse of thirteen year old Jane Doe and is currently incarcerated in Tehachapi, California.

# COMPLAINT

Plaintiffs Jane JS Doe, Carrie S., and Bruce S., now complain and allege as follows:

4.    Plaintiff **JANE JS DOE** ("**Jane Doe**") is and at all times herein mentioned was, a resident of the County of San Bernardino, State of California. The name used by Jane Doe in the Complaint is not the real name of Jane Doe, but is a fictitious name utilized to protect the privacy of Jane Doe, a victim of childhood sexual harassment, molestation and abuse. Jane Doe was a minor during the entire time of the sexual misconduct alleged herein and is currently a minor as of the time of filing this complaint.

5.    Plaintiffs are informed and believe, and on that basis allege, that defendant **LEDESMA & MEYER CONSTRUCTION COMPANY, INC.** ("**Ledesma & Meyer Construction**"), is a California corporation.  On information and belief Ledesma & Meyer Construction was authorized to do and was doing business within the County of San Bernardino, State of California.  Defendant Ledesma & Meyer Construction  is a large corporation that focuses its business on, among other things, building schools throughout the State, including the construction project at Cesar E. Chavez Middle School, located at 6650 Magnolia Avenue, San Bernardino, California 92407.

6.    Plaintiffs are informed and believe, and on that basis allege, that defendant **DAROLD HECHT** is, and at all times herein mentioned was, an individual incarcerated in Tehachapi, California in Kern County.  During the period of time during which the childhood sexual harassment, molestation and abuse of Plaintiff alleged herein took place, Darold Hecht was a thirty-four year old registered sex offender employed by his brother-in-law's company, Ledesma & Meyer Construction, to oversee and supervise the construction project at Cesar Chavez Middle School.

7.      Plaintiffs are informed and believe, and on that basis allege, that defendant SAN BERNARDINO CITY UNIFIED SCHOOL DISTRICT ("San Bernardino School District"), is, and at all times herein mentioned was, a governmental organization organized and existing by virtue of the laws of the State of California, and/or the laws of the County of San Bernardino, authorized to do and doing business within the County of San Bernardino, State of California.

8.      Plaintiffs are informed and believe, and on that basis allege, that defendant IONNE BARNES-JOSHUA ("officer Barnes-Joshua") is and at all times herein mentioned was, a resident of the County of San Bernardino, State of California. Plaintiffs further allege that, at all relevant time periods, officer Barnes-Joshua was a member of the San Bernardino City Unified School District Police Department ("School Police"). On information and belief, the School Police are a department or subdivision of the San Bernardino School District.

9.      Plaintiffs are informed and believe, and on that basis allege, that defendant JOSEPH LEDESMA ("Joseph Ledesma") is and at all times herein mentioned was, a resident of the County of San Bernardino, State of California. Plaintiffs further allege that Joseph Ledesma was and is an owner of defendant Ledesma & Meyer Construction.

10.     Plaintiffs are informed and believe, and on that basis allege, that defendant KRIS MEYER ("Kris Meyer") is and at all times herein mentioned was, a resident of the County of San Bernardino, State of California. Plaintiffs further allege that Kris Meyer was and is an owner of defendant Ledesma & Meyer Construction.

11.     Defendants DOES 3 through 100, inclusive, are sued herein under fictitious names since their true names and capacities are unknown to plaintiff. When the true names and capacities have been ascertained, plaintiff will amend this complaint to state the same.

12.     Plaintiffs are informed and believe, and on that basis allege, that all times mentioned herein, defendants and Does 3 through 100, were acting as the agents and/or employees of each remaining defendant, including but not limited to corporate officers, teachers, principals, vice-principals, administrators, office personnel, security officers and/or other staff, employed, retained, hired, trained, supervised by, and acting within the course and scope of said agency and/or employment with, the defendants, and that each fictitiously named defendant is responsible in some manner for the occurrences herein mentioned and that Plaintiff's damages as herein mentioned were proximately caused by such defendants.

13.     Defendants Ledesma & Meyer Construction, Darold Hecht, San Bernardino School District, officer Barnes-Joshua, Joseph Ledesma, Kris Meyer and Does 3 through 100, inclusive, are sometimes collectively referred to herein as "**Defendants**" and/or as "**All Defendants**"; such collective reference refers to all specifically and fictitiously named defendants.

14.     Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned herein, Defendants and each of them were the agents, representatives and/or employees of each other. In doing the things alleged, Defendants and each of them were acting within the course and scope of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

15.     Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned herein Defendants and each of them were the trustee, partners, servants, joint venturers, shareholders, contractors, and/or employees of each and every other Defendant, and the acts and omissions herein alleged were done by them, acting individually, through such capacity and within the scope of their authority, and with the permission and consent of each and every other Defendant and that said conduct was thereafter ratified by each and every other Defendant, and that each of them is jointly and severally liable to Plaintiff.

16. Unless otherwise specifically alleged, all factual allegations contained in this complaint are alleged on information and belief.

## OPERATIVE FACTS

17. In early 2006, Cesar Chavez Middle School was still in the process of being constructed (the "**Project**") but permitted students, including thirteen year old Jane Doe, to attend classes on campus during Project construction. The San Bernardino School District hired Ledesma & Meyer Construction ("**Ledesma & Meyer**") to construct the Project.

18. Ledesma & Meyer hired owner Joseph Ledesma's then thirty-four year old brother-in-law, Darold Hecht, to work on and to supervise the construction Project at Cesar Chavez Middle School as a superintendent. Despite Ledesma & Meyer, Joseph Ledesma and Kris Meyer's knowledge that Darold Hecht was a registered sex offender who was previously convicted on two different occasion of sexually abusing young girls, Ledesma & Meyer, Joseph Ledesma and Kris Meyer sent Darold Hecht to a school full of children and gave him unfettered access to Cesar Chavez Middle School's campus, including areas not under construction where young schoolchildren, including Jane Doe, occupied. Despite actual knowlege of Darold Hecht's prior convictions for sexually abusing young children, and despite actual knowledge of Darold Hecht's status as a registered sex offender, Ledesma & Meyer, Joseph Ledesma and Kris Meyer turned this sexual predator loose on all of the schoolchildren attending Cesar Chavez Middle School, including Jane Doe, and further failed to monitor Darold Hecht's conduct or his interaction with the schoolchildren.

19. Furthermore, the San Bernardino School District failed to comply with the specific laws designed to identify known sexual offenders such as defendant Darold Hecht and permitted him to roam the school campus during school hours and interact with the schoolchildren, including thirteen year old Jane Doe. No one from San Bernardino School District or

1   Ledesma & Meyer restricted registered sex offender Darold Hecht's access to the

2   schoolchildren despite being aware of his illegal interaction with Jane Doe.

3

4   20.   Thirty-four year old registered sex offender Hecht would even follow thirteen year old Jane

5         Doe to class and wait for her in full view of school faculty and administrators, yet the San

6         Bernardino School District, and its administrators, its faculty and its security personnel

7         failed to take any steps to protect Jane Doe from this sexual predator.

8

9   21.   In or about August 2006, registered sex offender Darold Hecht commenced his aggressive

10        campaign of seducing thirteen year old Jane Doe during her summer break from school.

11        While in a local restaurant, Darold Hecht approached an unsuspecting Jane Doe and engaged

12        her in conversation. During this conversation. Darold Hecht told Jane Doe that when she

13        returned to school after the summer break she could say "hello" to him at school, but he

14        could not say "hello" to her first.

15

16  22.   When school resumed after summer break in August 2006, while Jane Doe was talking with

17        the Cesar Chavez Middle School security guard at the school bus stop, sexual predator

18        Darold Hecht joined the conversation. A few minutes later, the security guard left, leaving

19        Jane Doe alone with twice convicted sex offender Darold Hecht. To make Jane Doe feel

20        comfortable talking to him, Darold Hecht told Jane Doe he was working for Cesar Chavez

21        Middle School overseeing the construction of her school.   Registered sex offender Darold

22        Hecht gave Jane Doe his phone number and asked her if he could drive her home from

23        school. Jane Doe declined his offer. Although Darold Hecht's interactions with Jane Doe

24        were occurring in front of Cesar Chavez Middle School personnel, no action was taken by

25        Cesar Chavez Middle School to protect its students, including Jane Doe.

26

27  23.   Darold Hecht thereafter began to follow Jane Doe around the campus in an attempt to speak

28        with Jane Doe during recess, class breaks and after school at the school bus stop. Darold

1   Hecht took advantage of his position supervising the construction of Cesar Chavez Middle
2   School and would blatantly flirt with Jane Doe in front of the Cesar Chavez Middle School
3   security guard and other Cesar Chavez Middle School teachers and personnel. Registered
4   sex offender Darold Hecht would tell Jane Doe how pretty she was and would ask her
5   personal questions about her school and family life. Jane Doe's friends who witnessed
6   Darold Hecht's interaction with Jane Doe recognized his conduct as inappropriate, yet the
7   Cesar Chavez Middle School security guards and teachers - who frequently observed Darold
8   Hecht following and speaking with Jane Doe - failed to report this inappropriate conduct as
9   required by law, failed to tell Darold Hecht to leave Jane Doe alone, and failed to take any
10   other steps to protect Jane Doe from being sexually abused by Darold Hecht.

11

12   24.   Registered sex offender Darold Hecht persisted in his efforts to get thirteen year old Jane
13   Doe to allow him to drive her home from school. Jane Doe was apprehensive about Darold
14   Hecht's persistence, but trusted him because he worked for Cesar Chavez Middle School and
15   because he frequently spoke with her on campus and at the bus stop in front of school faculty
16   and school security guards and they took no steps to prevent this interaction. Jane Doe
17   initially refused Darold Hecht's offers to drive her home but, being an unknowing and
18   trusting thirteen year old year, spoke with him by telephone on several occasions. During
19   those conversations, Darold Hecht would insist that he could be trusted and insist that it
20   would be no problem for him to drive Jane Doe home from school.

21

22   25.   During September 2006, sexual predator Darold Hecht became more aggressive in his pursuit
23   of Jane Doe and followed the school bus on which Jane Doe was riding. After Jane Doe
24   exited the bus, Darold Hecht drove slowly behind her as she walked towards her house,
25   speeding off as Jane Doe walked up her drive way. This conduct alarmed Jane Doe, but
26   Darold Hecht later apologized to her and continued to talk with Jane Doe between classes
27   and after school without any interference from school faculty or personnel.

28

26.  On or about <u>October 10, 2006</u>, Jane Doe got onto the school bus to go home. Before she got on the bus, Darold Hecht told Jane Doe to telephone him. While on the bus, Jane Doe did as instructed and called Darold Hecht using her cell phone. Darold Hecht instructed Jane Doe to get off the bus before she got home so that could pick her up. Jane Doe complied with his instructions and got off the bus and into Darold Hecht's vehicle.   On the ride to her house, Darold Hecht talked to Jane Doe about her friends and school. He told Jane Doe that he could be trusted and that she had nothing to worry about taking rides from him. Darold Hecht empathized with Jane Doe and made her feel comfortable before dropping Jane Doe off at the bus stop near her house.

27.  On or about the morning of <u>October 12, 2006</u>, unbeknownst to Jane Doe, Darold Hecht waited for Jane Doe at the bus stop in her neighborhood. When Jane Doe arrived at her bus stop, Darold Hecht instructed her to get in his car so that he could take her to school. Jane Doe complied, but rather than taking Jane Doe directly to school, sexual predator Darold Hecht drove to Jane Doe to a local park. Darold Hecht told Jane Doe to get out of the car and walk with him to the back of the park. Jane Doe was overwhelmed by sexual predator Darold Hecht who was more than twice her age and did as ordered by Darold Hecht. Registered sex offender Darold Hecht talked to Jane Doe for a few minutes at the back of the park and then kissed thirteen-year-old Jane Doe on the lips. Darold Hecht told Jane Doe that if she told her parents or anyone at school, she would get into trouble at home and at school. Because of Darold Hecht's threat, Jane Doe did not report the incident to anyone. Jane Doe did not understand that she had not done anything wrong and that she was, instead, an innocent victim of a known sexual predator.

28.  On or about the next day, <u>October 13, 2006</u>, Darold Hecht picked Jane Doe up from Cesar Chavez Middle School after classes were over. On the drive to Jane Doe's house, Darold Hecht abruptly pulled the car over and asked Jane Doe if she was "ready for oral." Without warning, registered sexual offender Darold Hecht then pulled his penis out of his pants and

1     told thirteen year old Jane Doe to "suck on it like a lollipop." Jane Doe, who was frightened

2     for her safety, orally copulated Darold Hecht as he demanded. Darold Hecht told Jane Doe

3     they did what grown ups do and that he liked her. Darold Hecht ordered Jane Doe not to tell

4     anyone. Darold Hecht told Jane Doe that if she told her parents or anyone at school, she

5     would get into trouble. Jane Doe did not understand that she had not done anything wrong

6     and that she was, instead, an innocent victim of a known sexual predator.

7

8  29.    On or about October 14, 2006, Darold Hecht again picked Jane Doe up from Cesar Chavez

9     Middle School after classes were over to take her home. On this trip, despite her protests,

10    Darold Hecht drove Jane Doe to a remote location in the city of Devore and ordered Jane

11    Doe to give him a "blow job." Alone in a car with a man more than twice her age and with

12    no means of transportation or escape, thirteen year old Jane Doe who was frightened for her

13    safety, felt she had no choice but to do as ordered and orally copulate Darold Hecht. Jane

14    Doe did orally copulate Darold Hecht for several minutes before Darold Hecht ejaculated

15    into Jane Doe's mouth. Again, Darold Hecht told Jane Doe that he liked her. And again,

16    Darold Hecht ordered Jane Doe not to tell anyone. Darold Hecht told Jane Doe that if she

17    told her parents or anyone at school, she would get into trouble. Because of Darold Hecht's

18    threat, Jane Doe did not tell her parents or her teachers. Jane Doe did not understand she had

19    done nothing wrong and she was, instead, an innocent victim of a known sexual predator.

20

21  30.    For the next several weeks during October 2006, registered sex offender Darold Hecht gave

22    Jane Doe rides to and from Cesar Chavez Middle School almost every day. During each of

23    those car trips, Darold Hecht continued to carry out his sexual abuse of thirteen year old Jane

24    Doe. Darold Hecht exploited Jane Doe's tender age and vulnerability and threatened Jane

25    Doe that if she told anyone about their relationship Jane Doe would get in trouble. Jane Doe

26    believed this to be true and, frightened and fearing retribution, felt she could tell no one.

27    Jane Doe did not understand that she had not done anything wrong and that she was, instead,

28    an innocent victim of a known sexual predator.

31. Because of the failure of Cesar Chavez Middle School and the School District to protect her, Jane Doe went from being a happy thirteen year old girl playing with her friends at recess and taking the school bus, to a victimized child stalked on campus, at recess, and while she waited for her school bus, by a sexual-predator Darold Hecht. Despite the overt and obvious improper on-campus contact and interaction between a thirty-four year old registered sex offender and an innocent thirteen year old child, no one from the School District or Ledesma & Meyer took any steps to prevent the continued sexual and mental abuse Jane Doe.

32. On or about October 19, 2006, Darold Hecht again picked up Jane Doe at the school bus stop to her drive to school. Instead of driving to school, Darold Hecht drove Jane Doe to a Denny's restaurant parking lot and forced himself on top of her. Darold Hecht used one hand to hold Jane Doe's hands down and then began to force kisses on Jane Doe. Thirteen year old Jane Doe was scared and told Darold Hecht to stop. Registered sex offender Darold Hecht refused to stop and pulled down Jane Doe's pants and underpants. Darold Hecht forced himself into thirteen year old Jane Doe and proceeded to rape her for several violent minutes while Jane Doe cried out in pain and pleaded with him to stop. When Darold Hecht finished, he told a crying Jane Doe she needed to "put out or get out" and "get tough." Sex offender Darold Hecht then drove a traumatized Jane Doe to school. Jane Doe did not attend her first three classes that day, but instead hid in the school bathroom and cried.   A classmate of Jane Doe's asked her why she had missed school, and Jane Doe told her about being raped by Darold Hecht. Later that day Darold Hecht located Jane Doe at Cesar Chavez Middle School and apologized for "being rough" earlier that morning. Again, Darold Hecht told Jane Doe that he liked her. And again, Darold Hecht ordered Jane Doe not to tell anyone. Darold Hecht again told Jane Doe that if she told her parents or anyone at school, she would get into trouble at home and at school. Thirteen year old Jane Doe was confused, embarrassed and frightened. Jane Doe did not understand that she had not done anything wrong and that she was, instead, an innocent victim of a known sexual predator.

33. Because of her tender age, Jane Doe did not understand that she was being victimized by registered sex offender Darold Hecht. She was confused and did not understand what was occurring. Darold Hecht told Jane Doe that he liked her and that he was the only person she could talk to because she would get into trouble if anyone learned what they had done. Due to the mental and physical abuse inflicted upon her, thirteen year old Jane Doe felt feelings of dependency, loyalty, affection and friendship towards thirty-four year old sexual predator Darold Hecht such that she did not know she did not understand the mental and physical harm inflicted upon her and that was being victimized.

34. On or about October 21, 2006, Cesar Chavez Middle School went off track. During this time, Jane Doe volunteered to tutor students at Kimbark Elementary School, also within the San Bernardino City Unified School District system. Darold Hecht continued to stalk Jane Doe at Kimbark Elementary School. Darold Hecht would come onto the campus and pick Jane Doe up during the lunch break. During each of the times that Darold Hecht removed Jane Doe from the Kimbark Elementary School campus, Darold Hecht forced thirteen year old Jane Doe to orally copulate him and forced other forms of sexual abuse upon her. Darold Hecht would frequently be seen speaking to Jane Doe and leaving the campus of Kimbark Elementary School by Kimbark personnel, yet no one reported this inappropriate conduct, no one told Darold Hecht to leave Jane Doe alone, and no action was taken to protect Jane Doe from this sexual predator.

35. During late October 2006, one of Jane Doe's classmates told her own mother that Jane Doe being raped and abused by Darold Hecht. On or about October 23, 2006, the mother - who was a teacher within San Bernardino School District - reported Darold Hecht's sexual abuse of thirteen year old Jane Doe to the San Bernardino School District.

36. The San Bernardino School District notified the School Police, who assigned officer Barnes-Joshua to investigate the sexual abuse allegation.

37. Despite their legal obligation to do so, the San Bernardino School District and officer Barnes-Joshua failed to ever report the sexual abuse of Jane Doe to any police department or sheriff's department.

38. Again, despite their legal obligation to do so, the San Bernardino School District and officer Barnes-Joshua also failed to notify Jane Doe's Parents about the allegations that their daughter was the victim of sexual abuse.

39. On or about October 25, 2006, officer Barnes-Joshua contacted the teacher who had reported the sexual abuse of Jane Doe by registered sex offender Darold Hecht. Neither officer Barnes-Joshua, nor anyone else from the School Police, wrote a report regarding what was said during that meeting. Darold Hecht's continued sexual abuse of Jane Doe could have been stopped, but no action was taken.

40. Had the San Bernardino School District or officer Barnes-Joshua immediately notified the parents of Jane Doe and/or a municipal police or sheriff's department, of the allegation of sexually abuse of Jane Doe by known sex offender Darold Hecht, as they were legally required to do so, the mental and physical abuse of Jane Doe by Darold Hecht could have been immediately stopped. But, because neither Jane Doe's parents, nor a municipal police or sheriff's department, were notified of these serious allegations of sexual misconduct, Darold Hecht continued to sexually and mentally abuse thirteen year old Jane Doe without interference.

41. On or about October 28, 2006, officer Barnes-Joshua spoke to the vice-principal of Cesar Chavez Middle School to find out information about Darold Hecht. Officer Barnes-Joshua then gave Darold Hecht's information to a municipal police dispatcher to run through the police department's criminal system. However, no further action was taken by officer Barnes-Joshua, or by anyone else, to protect Jane Doe from registered sex offender Darold

1    Hecht. Neither officer Barnes-Joshua nor anyone else from the School Police or the San

2    Bernardino School District contacted Jane Doe's Parents regarding the dangerous risk Darold

3    Hecht's contact with Jane Doe posed.

4

5    42.   After the San Bernardino School District had been notified, and after the School Police had

6          commenced an alleged investigation of the allegations of sexual abuse of thirteen year old

7          Jane Doe by registered sex offender Darold Hecht, Darold Hecht continued to physically and

8          mentally abuse Jane Doe. On or about November 2, 2006, and November 9, 2006, sexual

9          predator Darold Hecht came to Jane Doe's house while her parents were away and raped and

10         abused young Jane Doe. Jane Doe, alone in her house and being confronted by Darold

11         Hecht, felt she had no choice but to have sex with Darold Hecht. Again, Darold Hecht told

12         Jane Doe that he liked her. And again, Darold Hecht ordered Jane Doe not to tell anyone.

13         Darold Hecht told Jane Doe that if she told her parents or anyone at school, she would get

14         into trouble at home and at school. Thirteen year old Jane Doe was confused, embarrassed

15         and frightened. Jane Doe did not understand that she had not done anything wrong and that

16         she was, instead, an innocent victim of a known sexual predator.

17

18   43.   During late November 2006, Jane Doe became increasingly uncomfortable with the sexual

19         relationship Darold Hecht had forced upon her. Jane Doe told Darold Hecht she did not want

20         to see him anymore.   Again, Darold Hecht told Jane Doe that he liked her. And again,

21         Darold Hecht ordered Jane Doe not to tell anyone what had previously happened to her.

22         Darold Hecht again told Jane Doe that if she told her parents or anyone at school, she would

23         get into trouble at home and at school. Thirteen year old Jane Doe was confused,

24         embarrassed and frightened. Jane Doe did not understand that she had not done anything

25         wrong and that she was, instead, an innocent victim of a known sexual predator.

26

27   44.   On or about January 6, 2007 - more than two month's after the school had been formally

28         notified of the allegations of the sexual abuse of Jane Doe by registered sex offender Darold

1    Hecht - the vice-principal of Cesar Chavez Middle School pulled Jane Doe out of a

2    classroom party in order for Jane Doe to attend the officer-initiated interrogation regarding

3    the report of sexual abuse. This was the first time officer Barnes-Joshua, or anyone from

4    Cesar Chavez Middle School or the School District, contacted Jane Doe to speak with her

5    about the allegations of her sexual abuse by Darold Hecht. Thereafter, officer Barnes-Joshua

6    - who was dressed in full police uniform and who was carrying a gun on her belt which was

7    visible to Jane Doe - interrogated Jane Doe for approximately two (2) hours for the sole law

8    enforcement purpose of investigating the claims of sexual abuse. The interrogation of Jane

9    Doe was conducted without her parents being notified of the same and without her parents

10   presence. Because Darold Hecht ordered Jane Doe not to tell anyone what had previously

11   happened to her, and because Darold Hecht had told Jane Doe that if she told her parents or

12   anyone at school, she would get into trouble, Jane Doe repeatedly denied that anything had

13   occurred. Thirteen year old Jane Doe was confused, embarrassed and frightened. Jane Doe

14   was frightened by Darold Hecht's threats and Jane Doe was intimidated by officer Barnes-

15   Joshua's demeanor, uniform and visible side arm. Jane Doe did not understand that she had

16   not done anything wrong and that she was, instead, an innocent victim of a known sexual

17   predator. Neither officer Barnes-Joshua nor the San Bernardino School District obtained

18   parental consent to interview Jane Doe. Furthermore, neither officer Barnes-Joshua nor the

19   San Bernardino School District contacted Jane Doe's parents after the interview concluded,

20   nor were Jane Doe's parents at any other time notified about the interview or even about the

21   alleged sexual abuse of their daughter by a known registered sex offender.

22

23   45.   After the January 6, 2007 interrogation by officer Barnes-Joshua, Jane Doe immediately

24   called her parents to tell them about the meeting she had with officer Barnes-Joshua. Again,

25   because Jane Doe did not understand she had done nothing wrong and that she was, instead,

26   an innocent victim of a known sexual predator, Jane Doe told her father a school police

27   officer met with her at school regarding a report that she was having sex with an older man

28   that but nothing of the sort had occurred. Thirteen year old Jane Doe was confused,

1     embarrassed, frightened and intimidated.

2

3   46.    Immediately after receiving the January 6, 2007 call from Jane Doe, Jane Doe's mother,

4       Carrie S., called both the School Police and Cesar Chavez Middle School. Carrie S. spoke

5       with an employee of the School Police who told Carrie S. that they did not believe that the

6       allegations of Jane Doe's sexual assault were true and that the Cesar Chavez Middle School

7       and the School Police would assume the responsibility for investigating these allegations.

8       Carrie S. was upset and distraught. Carrie S. told the School Police employee that she did

9       not believe that her daughter had been sexually abused but that Carrie S. intended to file a

10      civil lawsuit for being excluded from the meeting with her daughter and, if the investigation

11      proved the allegations to be true, against Cesar Chavez Middle School, the San Bernardino

12      School District, the School Police, and any other person that may have hurt her daughter or

13      failed to protect her daughter from harm. The School Police employee told Carrie S. not to

14      file suit against anyone because it would interfere with the investigation and any potential

15      criminal proceeding. After the discussion with the School Police concluded, Carrie S. called

16      Cesar Chavez Middle School. Carrie S. spoke with both the vice-principal and a counselor

17      from Cesar Chavez Middle School about what she had discussed with the School Police, and

18      the School Police's instruction that Carrie S. not file suit until the completion of all

19      investigations and any potential criminal proceedings. Carrie S. asked the Cesar Chavez

20      Middle School vice-president and the counselor if the instructions she had received from the

21      School Police were correct. The Cesar Chavez Middle School vice-principal and counselor

22      confirmed that the instructions Carrie S. received from the School Police were correct and

23      reiterated to Carrie S. that the school and the School Police were still conducting an

24      investigation into the allegations that Darold Hecht had sexually abused Jane Doe. The Cesar

25      Chavez Middle School vice-principal told Carrie S. that she should wait to file any lawsuit

26      on her behalf or on Jane Doe's behalf until after all investigations were completed and until

27      any potential criminal proceedings were concluded so that such a civil lawsuit did not

28      interfere with the investigation or potential criminal prosecution.

47. The School Police and the San Bernardino School District subsequently acted in a manner consistent with the statements they made to Carrie S. regarding waiting to file a civil law so as to not interfere with any criminal investigations. Specifically, the San Bernardino School District admittedly chose *not* to interview Jane Doe or Darold Hecht about the sexual assaults "in order to preserve the integrity of the criminal investigation."

48. The San Bernardino School District, the School Police, and Cesar Chavez Middle School's vice-principal and counselor all intended for Jane Doe's parents to rely on their statements in order to protect the San Bernardino School District from being exposed to liability for, among other things, (i) permitting a registered sex offender to work on the campus around children which directly resulted in Jane Doe's sexual abuse, (ii) failing to properly investigate the allegations of illegal sexual contact between registered sex offender Darold Hecht and Jane Doe, (iii) failing to protect Jane Doe from further sexual abuse by Darold Hecht, (iv) failing to notify Jane Doe's parents of the allegations that Darold Hecht had sexually abused their daughter, and (v) failing to notify Jane Doe's parents of the January 6, 2007 meeting between the School Police and Jane Doe.

49. The San Bernardino School District, the School Police and Cesar Chavez Middle School further intended for Jane Doe's parents to rely on their statements regarding the need to wait to sue in order to protect the School District from the disturbing disclosure that registered sex offender Darold Hecht was simultaneously engaged in a sexual relationship with Cesar Chavez Middle School's registrar, Jennifer Hayes, at the same time Darold Hecht was sexually abusing thirteen year old Jane Doe. Darold Hecht and Jennifer Hayes - although both married to other people - engaged in an illicit sexual relationship from August 2005 through May 2007. Jennifer Hayes gave birth to Darold Hecht's child during the period of time Darold Hecht was sexually abusing Jane Doe.

50.     As a consequence of their statements and affirmative actions, Jane Doe's parents reasonably relied upon the instructions of the San Bernardino School District employees to not file any civil lawsuits until after any criminal proceeding had finished. The highest level of education achieved by both of Jane Doe's parents was a high school degree.  Carrie S. works for volunteer services at a community hospital and Jane Doe's father, Bruce S., is a self-employed contractor.  Thus, neither Carrie S. nor Bruce S. had knowlege of the applicable law regarding the filing of civil lawsuits against public entities.  Moreover, Carrie S. and Bruce S. had not retained or consulted a lawyer and  were unaware of the true state of the facts. Thus, Jane Doe's parents were lulled into a sense of security and were persuade not to avail themselves of legal assistance in protection of their daughter's rights.

51.     Because Darold Hecht ordered Jane Doe not to tell anyone what had previously happened to her and because Darold Hecht had told Jane Doe that if she told her parents or anyone at school, she would get into trouble at home and at school, Jane Doe had denied that anything had occurred.  Thirteen year old Jane Doe was confused, embarrassed and frightened. Due to her youth and inexperience, Jane Doe did not understand that she had not done anything wrong and that she was, instead, an innocent victim of a known sexual predator.  In addition to physical injury, Jane Doe suffered severe emotional distress and confusion as a result of her sexual abuse by Darold Hecht.  Because of the physical and emotional trauma caused to Jane Doe, she did not understand that she had been victimized such that she could tell her parents what had occurred to her and the devastating details of the repeated sexual abuse of her by a registered sex offender, Darold Hecht.  As such, Jane Doe's parent's remained unaware of Darold Hecht's sexual abuse of their daughter and were unable to comfort her and seek mental and physical help for her.

52.     After nearly two years of suffering and anguish, Jane Doe, at the age of fifteen, finally realized she had been a victim of Darold Hecht, and was not responsible for the sexual and mental abuse Darold Hecht inflicted upon her. As a result, in or about October 2008, Jane

1    Doe understood she had been a victimized and she was finally able to tell her parents of the
2    terrible ordeal she suffered at the hands of Darold Hecht. Jane Doe's parents were
3    distraught. They could not understand how their thirteen year old daughter could be been
4    exposed to such viciousness on the campus of her middle school and after the assurances
5    from both the middle school and the School Police that the allegations against Darold Hecht
6    were being investigated. As a result of what Jane Doe had told him, her father, Bruce S.,
7    promptly reported the abuse of his daughter to the San Bernardino Sheriff's office and
8    arranged for Jane Doe has to undergo mental counseling in an attempt to help her heal.
9
10   53.  In June 2009, Darold Hecht was tried and convicted for the sexual abuse of Jane Doe. He
11        was sentenced in July 2009 and is currently incarcerated in Jamestown, California.
12
13                          **GOVERNMENTAL CLAIM FILING**
14
15   54.  Pursuant to the instructions of the employees of the San Bernardino School District, the
16        Cesar Chavez Middle School and the School Police to hold off on taking any legal action
17        until any potential criminal prosecution of Darold Hecht was completed, Jane Doe and her
18        parents, Carrie S. and Bruce S., did not pursue their civil remedies against Cesar Chavez
19        Middle School, the School Police, or the San Bernardino City Unified School District until
20        after Darold Hecht's criminal conviction was obtained during July 2009.
21
22   55.  Thereafter, in December 2009, Jane Doe timely submitted a Government Tort Claim to Cesar
23        Chavez Middle School, the School Police, and the San Bernardino School District, pursuant
24        to California *Government Code* § 910, *et seq.*, and otherwise complied with all prerequisites
25        under the laws of the State of California to bring said claim.
26
27   56.  Jane Doe's Government Claim was rejected on February 5, 2010. This lawsuit followed.
28

## AFTERMATH OF THE SEXUAL ASSAULT OF JANE DOE

57.   Since being physically and mentally injured by registered sex offender Darold Hecht, Jane Doe has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, shame, difficulty trusting others, sleeplessness, and loss of enjoyment of life.  Jane Doe has incurred, and will continue to incur, expenses for psychological treatment, therapy and counseling.  Previously a bright, hard working student, Jane Doe continues to be distracted by her guilt and grief and has suffered a dramatic drop in her school grades. Jane Doe, unable to cope with the effects of the mental and physical abuse she has suffered, has exhibited severe self-destructive behavior.

58.   At present, it is unknown how long Jane Doe will need psychological therapy.  It is also unknown whether any treatment will be successful.  It is anticipated that Jane Doe will require therapy for an extensive period of time as a result of the physical and mental injury she has suffered.

### FIRST CAUSE OF ACTION

#### (Negligence Per Se - Failure to Report Sex Abuse)

**(Jane Doe Against Defendants San Bernardino School District, Officer Barnes-Joshua and Does 3 through 100)**

59.   Jane Doe realleges and incorporates by reference the applicable allegations of paragraphs 1 through 58 of this complaint, inclusive and further alleges:

60.   Pursuant to California *Government Code* § 815.6, liability is imposed upon public entities for injuries proximately caused by the entity's failure to discharge a mandatory duty imposed by an enactment to protect against risks of the particular kind of injury suffered.  The Child

1    Abuse and Neglect Reporting Act (*Penal Code* §11164, *et seq.*) is such an enactment.

2

3    61.    California *Penal Code* § 11164(b) provides that:

4

5           [t]he intent and purpose of this article is to protect children from abuse and neglect.

6           In any investigation of suspected child abuse or neglect, all persons participating in

7           the investigation of the case shall consider the needs of the child victim and shall do

            whatever is necessary to prevent psychological harm to the child victim

8

9    62.    The duty established by the Child Abuse and Neglect Reporting Act, as set forth in California

10          *Penal Code* § 11166(a), requires that:

11

12          **a mandated reporter shall make a report to an agency specified in Section**

13          **11165.9** whenever the mandated reporter, in his or her professional capacity or within

14          the scope of his or her employment, has knowledge of or observes a child whom the

            mandated reporter knows or reasonably suspects has been the victim of child abuse

15          or neglect. [Emphasis added.]

16

17   63.    As defined by California *Penal Code* § 11165.7, "mandated reporter," includes, but is not

18          limited to, teachers, instructional aides, classified employees of any public school, an

19          employee of a school district police or security department, and school districts.

20

21   64.    California *Penal Code* § 11165.9 explicitly provides that reports of suspected child abuse are

22          to made "to any police department or sheriff's department, **not including a school district**

23          **police or security department.**" [Emphasis added.]

24

25   65.    In this instance, the San Bernardino School District and Officer Barnes-Joshua were

26          mandated reporters at all times relevant to this complaint.

27

28

66. In October 2006, the San Bernardino School District and officer Barnes-Joshua, in their professional capacities and/or within the scope of their employment, knew or reasonably suspected that thirteen year old Jane Doe had been sexually abused by Darold Hecht, the then thirty-four year old registered sex offender working on the campus of Cesar Chavez Middle School. This reasonable suspicion of voluntary sexual conduct between minor under age 14 and a person of disparate age constituted a violation of *Penal Code* § 288a prohibiting lewd and lascivious conduct with child under age 14 and was required by law to be reported.

67. Despite the knowledge and/or reasonable suspicions of thirteen year old Jane Doe being the victim of sexual abuse, the San Bernardino School District and officer Barnes-Joshua failed to make a mandated report to an agency specified in *Penal Code* § 11165.9, failed to consider the needs of Jane Doe, failed to prevent psychological and physical harm to Jane Doe, and otherwise failed to exercise reasonable diligence in the discharge of their mandatory duties under the Child Abuse and Neglect Reporting Act, which constitutes negligence per se.

68. As a direct, proximate and legal result of the San Bernardino School District's and officer Barnes-Joshua's failure to discharge the mandatory duty imposed by the Child Abuse and Neglect Reporting Act, thirteen year old Jane Doe was subjected to continued sexual, mental and physical abuse by registered sex offender Darold Hecht which has directly resulted in serious and permanent injuries to Jane Does's her person. Additionally, since being physically and mentally injured by registered sex offender Darold Hecht, Jane Doe has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, shame, difficulty trusting others, sleeplessness, and loss of enjoyment of life. Jane Doe has incurred, and will continue to incur, expenses for psychological treatment, therapy and counseling. As a result of her injuries, Jane Doe has been damaged in an amount subject to proof at the time of trial but not less than FIVE MILLION DOLLARS ($5,000,000.00).

## SECOND CAUSE OF ACTION

### (Negligent Hiring/Retention)

### (Jane Doe Against Defendants San Bernardino School District, Ledesma & Meyer Construction and Does 3 through 100)

69. Jane Doe realleges and incorporates by reference the applicable allegations of paragraphs 1 through 68 of this complaint, inclusive and further alleges:

70. An employer may be liable for injuries caused by an unfit employee if the employer knows or has reason to know that an employee hired or retained is incompetent or unfit to perform the duties required of the job, or if the employer fails to use reasonable care to discover the employee's incompetence or unfitness before hiring the employee.

71. Moreover, an employee of a public entity is liable for his torts to the same extent as a private person (California *Government Code* §820(a)) and the public entity is vicariously liable for any injury which its employee causes (California *Government Code* §815.2(a)) to the same extent as a private employer (California *Government Code* §815(b)).

72. Darold Hecht was incompetent and unfit to be employed in a position that gave him unfettered daily access to a middle school campus with children present on the campus because he is a sexual molester and a registered sex offender who had been convicted on two previous occasions of sexually abusing young girls. Darold Hecht posed an apparent undue risk of harm to the students of Cesar Chavez Middle School in light of the work performed

73. Ledesma & Meyer knew or had reason to know that Darold Hecht - who is owner Joseph Ledesma's brother-in-law - was a registered sex offender who had previously been convicted of sexually abusing young girl and thus, that Darold Hecht posed a reasonably foreseeable risk of harm to students at the construction project, including Jane Doe, while working in a

1  position which gave Darold Hecht daily access to the Cesar Chavez Middle School campus

2  while children and thus owed a duty to protect the students from such harm.

3

4  74.  The San Bernardino School District's employees responsible for hiring Ledesma & Meyer,

5  including Darold Hecht, to complete construction of Cesar Chavez Middle School while

6  children were present thereon knew or had reason to know that Ledesma & Meyer's

7  supervisor for the school construction project, Darold Hecht, was a registered sex offender

8  who had previously been convicted of sexually abusing young girls and thus, that he posed

9  a reasonably foreseeable risk of harm to students with whom Darold Hecht would come into

10  contact, including Jane Doe, and thus owed a duty to protect the Cesar Chavez Middle

11  School students, including Jane Doe, from such harm.

12

13  75.  Unsupervised exposure to children was clearly within the scope of Ledesma & Meyer and

14  the San Bernardino School District's employment of Darold Hecht, and hiring Darold Hecht

15  necessarily put children at risk. Darold Hecht would normally encounter young female

16  students at the Project without going outside the scope of his employment. No other result

17  would have occurred from Darold Hecht's employment by Ledesma & Meyer and the San

18  Bernardino School District except Darold Hecht's sexual abuse of a student at the school.

19

20  76.  Ledesma & Meyer and the San Bernardino School District breached the duty which they

21  owed to the students at Cesar Chavez Middle School, including Jane Doe, when they hired

22  and retained Darold Hecht for a position of unsupervised employment at  Cesar Chavez

23  Middle School despite the fact that they knew or should about Darold Hecht's status as a

24  registered sex offender and the reasonably foreseeable risk of harm Darold Hecht posed to

25  the students. Moreover, despite the San Bernardino School District's subsequent knowledge

26  that Darold Hecht was, in fact, sexually abusing Jane Doe, the San Bernardino School

27  District nevertheless retained Darold Hecht in his position of employment and continued to

28  permit Darold Hecht to be on the Chavez Middle School campus and the San Bernardino

1    School District's premises unsupervised and otherwise unmonitored.

2

3  77.   As a direct, proximate and legal result of Darold Hecht's incompetence and unfitness for his

4        position at Cesar Chavez Middle School, and the San Bernardino School District, Ledesma

5        & Meyer's hiring and retaining Darold Hecht despite their knowledge of his unfitness and

6        incompetency, Jane Doe was subjected to continued sexual abuse by Darold Hecht which has

7        directly resulted in serious and permanent injuries to her person. Additionally, since being

8        physically and mentally injured by registered sex offender Darold Hecht and the conduct of

9        the other named defendants, Jane Doe has suffered, and continues to suffer, great pain of

10       mind and body, shock, emotional distress, physical manifestations of emotional distress,

11       embarrassment, loss of self-esteem, disgrace, humiliation, shame, difficulty trusting others,

12       sleeplessness, and loss of enjoyment of life. Jane Doe has incurred, and will continue to

13       incur, expenses for psychological treatment, therapy and counseling. As a result of her

14       injuries, Jane Doe has been damaged in an amount subject to proof at the time of trial but not

15       less than FIVE MILLION DOLLARS ($5,000,000.00).

16

17  78.   Jane Doe is informed and believes that the aforesaid acts directed towards her were carried

18       out with a conscious disregard of her right to be free from such tortious behavior, such as to

19       constitute oppression, fraud or malice pursuant to California *Civil Code* § 3294, entitling

20       Jane Doe to punitive damages in an amount appropriate to punish and deter these defendants

21       from ever again acting in such a reprehensible manner.

22

23                          **THIRD CAUSE OF ACTION**

24                            **(Negligent Supervision)**

25       **(Jane Doe Against Defendants San Bernardino School District, Ledesma & Meyer**

26                    **Construction and Does 3 through 100)**

27

28  79.   Jane Doe realleges and incorporates by reference the applicable allegations of paragraphs 1

through 78 of this complaint, inclusive and further alleges.

80. An employer is charged with guaranteeing the safety of anyone its employees may come into contact with, and will be liable for negligent supervision if it fails to do so, where the employer knows, or should know, that the employee, because of past behavior or other facts, is unfit for specific tasks to be performed.

81. Moreover, an employee of a public entity is liable for his torts to the same extent as a private person (California *Government Code* §820(a)) and the public entity is vicariously liable for any injury which its employee causes (California *Government Code* §815.2(a)) to the same extent as a private employer (California *Government Code* §815(b)).

82. Darold Hecht was incompetent and unfit to be employed in a position that gave him unfettered daily access to a middle school campus with children present on the campus because he is a sexual molester and registered sex offender who had been convicted on two previous occasions of sexually abusing young girls. Darold Hecht posed an undue risk of harm to the students of Cesar Chavez Middle School in light of the work performed.

83. In this instance, the San Bernardino School District and Ledesma & Meyer knew or should have known that hiring Darold Hecht - a registered sex offender previously convicted of sexually abusing two young girls and who is the brother-in-law of Ledesma & Meyer's owner, defendant Joseph Ledesma - created a particular risk or hazard that he would molest a child while working at Cesar Chavez Middle School thereby rendering Darold Hecht unfit for the specific tasks to be performed.

84. The San Bernardino School District and Ledesma & Meyer had an affirmative duty to supervise registered sex offender Darold Hecht to ensure that, after electing to employ him despite the reasonably foreseeable risk of harm he posed to students, including Jane Doe,

1  Darold Hecht would not be allowed to come into contact with the students so as to criminally

2  harass and seduce such students and/or be provided with an opportunity to come into contact

3  with the exact young girls with whom Darold Hecht has a history of sexually abusing.

4

5  85.  The San Bernardino School District and Ledesma & Meyer failed to adequately supervise

6  Darold Hecht to protect Jane Doe from being sexually abused by Darold Hecht as each

7  defendant permitted Darold Hecht to have unfettered access to the Cesar Chavez Middle

8  School campus  The particular risk and/or hazard Darold Hecht posed while employed to

9  work at Cesar Chavez Middle School materialized - Jane Doe was put into contact with

10  registered sex offender Darold Hecht and was repeatedly subjected to his campaign of

11  seduction and harassment while on the Cesar Chavez Middle School campus in plain view

12  of San Bernardino School District employees and was continuously sexually abused by

13  Darold Hecht over a period of several months.

14

15  86.  As a direct, proximate and legal result of Darold Hecht's incompetence and unfitness for his

16  position at Cesar Chavez Middle School, and the San Bernardino School District's and

17  Ledesma & Meyer's failure to supervise Darold Hecht despite their knowledge of his

18  incompetency, Jane Doe was subjected to continued sexual abuse by Darold Hecht which has

19  directly resulted serious and permanent injuries to her person.  Additionally, since being

20  physically and mentally injured by registered sex offender Darold Hecht, Jane Doe has

21  suffered, and continues to suffer, great pain of mind and body, shock, emotional distress,

22  physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace,

23  humiliation, shame, difficulty trusting others, sleeplessness, and loss of enjoyment of life.

24  Jane Doe has incurred, and will continue to incur, expenses for psychological treatment,

25  therapy and counseling. As a result of her injuries, Jane Doe has been damaged in an amount

26  subject to proof at the time of trial but not less than FIVE MILLION DOLLARS

27  ($5,000,000.00).

28

87.   Jane Doe is informed and believes that the aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California *Civil Code* § 3294, entitling Jane Doe to punitive damages in an amount appropriate to punish and deter these defendants from ever again acting in such a reprehensible manner.

## FOURTH CAUSE OF ACTION

### (Negligence)

**(Jane Doe Against Defendants San Bernardino School District, Ledesma & Meyer Construction, Joseph Ledesma, Kris Meyer and Does 3 through 100)**

88.   Jane Doe realleges and incorporates by reference the applicable allegations of paragraphs 1 through 87 of this complaint, inclusive and further alleges:

89.   California *Government Code* § 815.6 provides, in part: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty..." Here, California *Code of Regulations*, Title 5, §§ 630 and 5551 provide that school personnel are required to keep the school premises free from conditions creating life hazards and that the principal is responsible for the supervision and administration of the school, respectively.

90.   Ledesma & Meyer and its owners, Joseph Ledesma and Kris Meyer, owed a duty to protect pupils, like Jane Doe, who come into contact with their construction projects and workers.

91.   San Bernardino School District, Joseph Ledesma, Kris Meyer and Ledesma & Meyer breached their duty owed to the students of Cesar Chavez Middle School, including Jane Doe, by placing Darold Hecht - a man known by defendants to be a sexual predator with a

1     documented history of sexually abusing young girls like Jane Doe - into a unmonitored

2     position on the Project and providing Darold Hecht with unfettered access to the campus and

3     students of Cesar Chavez Middle School.

4

5   92.   Kris Meyer and Joe Ledesma directly participated in Ledesma & Meyer's decision to hire

6     registered sex offender Darold Hecht - who was Joseph Ledesma's brother-in-law and

7     authorized and/or directed that Ledesma & Meyer hire Darold Hecht for the specific purpose

8     of placing Darold Hecht in a position of employment at Cesar Chavez Middle School despite

9     having actual knowledge of Darold Hecht's sexually assaultive propensities.

10

11   93.   No other result would have occurred by such reckless action of placing registered sex

12     offender Darold Hecht onto the Cesar Chavez Middle School campus during the Project than

13     the sexual assault of a young girl attending school at Cesar Chavez Middle School. But for

14     San Bernardino School District, Joseph Ledesma, Kris Meyer and Ledesma & Meyer's

15     placement of Darold Hecht onto the campus, and these defendants' subsequent and

16     continuous failure to supervise Darold Hecht's interactions with the Cesar Chavez Middle

17     School students, Jane Doe would not have been repeatedly sexually abused by Darold Hecht.

18

19   94.   As a direct, proximate and legal result of defendants' breach of their duty to Jane Doe, Jane

20     Doe was subjected to continued sexual abuse by Darold Hecht which has directly resulted

21     in serious and permanent injuries to her person. Additionally, since being physically and

22     mentally injured by registered sex offender Darold Hecht, Jane Doe has suffered, and

23     continues to suffer, great pain of mind and body, shock, emotional distress, physical

24     manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace,

25     humiliation, shame, difficulty trusting others, sleeplessness, and loss of enjoyment of life.

26     Jane Doe has incurred, and will continue to incur, expenses for psychological treatment,

27     therapy and counseling. As a result of her injuries, Jane Doe has been damaged in an amount

28     subject to proof at the time of trial but not less than FIVE MILLION DOLLARS

1    ($5,000,000.00).

2    ## FIFTH CAUSE OF ACTION

3    (Negligent Supervision - California *Education Code* §44807)

4    (Jane Doe Against Defendants San Bernardino School District and Does 3 through 100)

5

6    95.    Jane Doe realleges and incorporates by reference the applicable allegations of paragraphs 1

7    through 94 of this complaint, inclusive and further alleges.

8

9    96.    Pursuant to California *Government Code* § 815.6, liability is imposed upon public entities

10    for injuries proximately caused by the entity's failure to discharge a mandatory duty imposed

11    by an enactment to protect against the risk of the particular kind of injury suffered.

12    California *Education Code* § 44807 is such an enactment.

13

14    97.    California *Education Code* § 44807 imposes a duty upon teachers, vice-principals, principals

15    and any certificated employee of a school district to "hold pupils to a strict account for their

16    conduct on the way to and from school, on the playgrounds, or during recess." The purpose

17    of this law requiring supervision of students on school property is to regulate students'

18    conduct so as to prevent disorderly and dangerous practices which are likely to result in

19    physical injury to immature scholars, such as thirteen year old Jane Doe.  California

20    *Education Code* § 44807 creates a special relationship between a school and school district

21    and its students resulting from the imposition of an affirmative duty on the school and school

22    district to take all reasonable steps to protect its students. A student may recover for injuries

23    proximately caused by a breach of a school and school district's duty to supervise.

24

25    98.    The San Bernardino School District knew or should have known about Darold Hecht's

26    propensity to sexually abuse young girls such as Jane Doe at the time Darold Hecht was

27    working on the campus of Cesar Chavez Middle School as Darold Hecht was a registered sex

28    offender who had previously been convicted on two different occasions of sexually abusing

1   young girls.

2

3   99.   Under these circumstances, the San Bernardino School District owed Jane Doe, a vulnerable

4         child under the age of 14, a duty of care to protect her from assault on campus, including

5         sexual assault, which was bound to be committed by Darold Hecht. The San Bernardino

6         School District further owed Jane Doe a duty to supervise its workers and to maintain

7         satisfactory screening procedures before hiring employees and had a duty to supervise and

8         control its agents, to prevent the harm that occurred to Jane Doe.

9

10  100.  The San Bernardino School District wholly breached its duties owed to Jane Doe by

11        permitting Darold Hecht to have unfettered daily access to Cesar Chavez Middle School

12        while children, including Jane Doe, were attending classes despite the significant risk of

13        harm to Jane Doe; failing to supervise Jane Doe on her way to and from school on the school

14        bus; failing to notify Jane Doe's Parents about the sexual abuse their daughter was suffering;

15        and otherwise failing to protect Jane Doe from being continuously raped and sexually abused

16        by Darold Hecht.

17

18  101.  As a direct, proximate and legal result of the San Bernardino School District breach of it duty

19        to supervise Jane Doe to protect her from harm, Jane Doe was subjected to continued sexual

20        abuse by Darold Hecht which has directly resulted in serious and permanent injuries to her

21        person. Additionally, since being physically and mentally injured by registered sex offender

22        Darold Hecht, Jane Doe has suffered, and continues to suffer, great pain of mind and body,

23        shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss

24        of self-esteem, disgrace, humiliation, shame, difficulty trusting others, sleeplessness, and loss

25        of enjoyment of life.  Jane Doe has incurred, and will continue to incur, expenses for

26        psychological treatment, therapy and counseling. As a result of her injuries, Jane Doe has

27        been damaged in an amount subject to proof at the time of trial but not less than FIVE

28        MILLION DOLLARS ($5,000,000.00).

## SIXTH CAUSE OF ACTION

(Failure to Fingerprint - California *Education Code* §§ 45125.1 and 45125.2)

(Jane Doe Against Defendants San Bernardino School District and Does 3 through 100)

102.   Jane Doe realleges and incorporates by reference the applicable allegations of paragraphs 1 through 101 of this complaint, inclusive and further alleges.

103.   Pursuant to California *Government Code* § 815.6, liability is imposed upon public entities for injuries proximately caused by the entity's failure to discharge a mandatory duty imposed by an enactment to protect against the risk of the particular kind of injury suffered. California *Education Code* § 46125.2 is such an enactment.

104.   California *Education Code* § 46125.2 imposes a duty upon teachers, vice-principals, principals and any certificated employee of a school district hiring a construction company for the construction of a school, knowing the construction company will have more than limited contact with the students, to build a physical barrier between the construction workers and the students and to ensure that all of the construction workers are continually supervised and monitored by an employee of the construction company who has been finger printed and ensured to be felony-free.

105.   Furthermore, California *Education Code* § 46125.1 imposes a duty upon teachers, vice-principals, principals and any certificated employee of a school district hiring a construction company to provide services to the school district such as school site grounds and landscape maintenance to fingerprint all employees of the construction site where more than limited contact with the students will occur.

106.   In this instance, the Cesar Chavez Middle School was in the process of being constructed. The San Bernardino School District hired Ledesma & Meyer to complete the Project and

1    provide other school site grounds and landscape maintenance. Because the San Bernardino

2    School District decided to permit classes to resume and students to be on campus during the

3    Project, the San Bernardino School District knew that Ledesma & Meyer's employees would

4    have more than limited contact with the students attending Cesar Chavez Middle School.

5

6    107.    Under these circumstances, the San Bernardino School District owed Jane Doe a duty

7    pursuant to *Education Code* § 46125.2 to build a physical barrier between Ledesma &

8    Meyer's workers and the students and to ensure that all of the Ledesma & Meyer's workers

9    are continually supervised and monitored by an employee of the Ledesma & Meyer who has

10   been finger printed and ensured to be felony-free.

11

12   108.   The San Bernardino School District breached their duty to Jane Doe imposed upon them by

13   *Education Code* § 46125.2 by recklessly failing to resurrect any boundary between Ledesma

14   & Meyer's workers, specifically Darold Hecht, and Cesar Chavez Middle School's students,

15   specifically Jane Doe. Rather, the San Bernardino School District permitted Darold Hecht

16   to have unfettered access to every part of the Cesar Chavez Middle School and unrestrained

17   contact with its students, including Jane Doe, despite the serious risk that such contact posed

18   for Jane Doe.

19

20   109.   The San Bernardino School District further breached their duty to Jane Doe imposed upon

21   them by *Education Code* §§ 46125.1 and 46125.2 by failing to ensure that all of the Ledesma

22   & Meyer's workers are continually supervised and monitored by an employee of the

23   Ledesma & Meyer who has been finger printed and ensured to be felony-free, as well as

24   finger printing all of Ledesma & Meyer's employees. The San Bernardino School District

25   wholly failed to finger print Darold Hecht, who was the employee of Ledesma & Meyer

26   responsible for supervising the Project. The San Bernardino School District's failure to

27   finger print Darold Hecht resulted in San Bernardino School District permitting the Project

28   to be supervised by a registered sex offender who had twice been convicted of sexually

1   abusing young girls such as Jane Doe.

2

3   110.   As a direct, proximate and legal result of the San Bernardino School District's breach of

4        their duties imposed by *Education Code* §§ 46125.1 and 46125.2 , Jane Doe was subjected

5        to continued sexual abuse by Darold Hecht which has directly resulted in serious and

6        permanent injuries to her person.  Additionally, since being physically and mentally injured

7        by registered sex offender Darold Hecht, Jane Doe has suffered, and continues to suffer, great

8        pain of mind and body, shock, emotional distress, physical manifestations of emotional

9        distress, embarrassment, loss of self-esteem, disgrace, humiliation, shame, difficulty trusting

10       others, sleeplessness, and loss of enjoyment of life.  Jane Doe has incurred, and will continue

11       to incur, expenses for psychological treatment, therapy and counseling. As a result of her

12       injuries, Jane Doe has been damaged in an amount subject to proof at the time of trial but not

13       less than FIVE MILLION DOLLARS ($5,000,000.00).

14

15               **SEVENTH CAUSE OF ACTION**

16              **(Sexual Battery - *Civil Code* § 1708.5)**

17             **(Against Darold Hecht and Does 3 through 100)**

18

19   111.   Jane Doe realleges and incorporates by reference the applicable allegations of paragraphs 1

20       through 110 of this complaint, inclusive.

21

22   112.   Pursuant to *Civil Code* § 1708.5, a person commits a sexual battery if he acts with the intent

23       to cause harmful or offensive contact (or to cause imminent apprehension of contact) with

24       an "intimate part" of the body, and a sexually offensive contact does result.

25

26   113.   Darold Hecht intentionally, recklessness and wantonly did acts which were intended to, and

27       did result in harmful and offensive contact with intimate parts of Jane Doe's person,

28       including but not limited to Darold Hecht illegally tongue kissing Jane Doe; rubbing, groping

1    and fondling Jane Doe's naked breasts, buttocks and vagina; digitally penetrating Jane Doe's
2    vagina; ejaculating in Jane Doe's vagina and mouth; and engaging in vaginal intercourse
3    with Jane Doe.

5  114.    Darold Hecht did the aforementioned acts with the intent to cause a harmful or offensive
6          contact with an intimate part of Jane Doe's person, and would offend a reasonable sense of
7          personal dignity. Further, said acts did cause a harmful or offensive contact with an intimate
8          part of Jane Doe's person that would offend a reasonable sense of personal dignity.

10 115.   Because of Jane Doe's young age under the age of consent, Jane Doe was unable to, and did
11         not, give meaningful consent to such acts.

13 116.   As a direct, proximate and legal result of the acts of Darold Hecht, Jane Doe sustained
14         serious and permanent injuries to her person.  Additionally, since being physically and
15         mentally injured by registered sex offender Darold Hecht, Jane Doe has suffered, and
16         continues to suffer, great pain of mind and body, shock, emotional distress, physical
17         manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace,
18         humiliation, shame, difficulty trusting others, sleeplessness, and loss of enjoyment of life.
19         Jane Doe has incurred, and will continue to incur, expenses for psychological treatment,
20         therapy and counseling. As a result of her injuries, Jane Doe has been damaged in an amount
21         subject to proof at the time of trial but not less than FIVE MILLION DOLLARS
22         ($5,000,000.00).

24 117.   Jane Doe is informed and believes that the aforesaid acts directed towards her were carried
25         out with a conscious disregard of her right to be free from such tortious behavior, such as to
26         constitute oppression, fraud or malice pursuant to California *Civil Code* § 3294, entitling
27         Jane Doe to punitive damages in an amount appropriate to punish and deter these defendants
28         from ever again acting in such a reprehensible manner.

## EIGHTH CAUSE OF ACTION

### (Sexual Abuse of Minor -*Penal Code* § 288a)

### (Against Darold Hecht and Does 3 through 100)

118.   Jane Doe realleges and incorporates by reference the applicable allegations of paragraphs 1 through 117 of this complaint, inclusive.

119.   California *Penal Code* § 288a makes it a felony for any person to participate in an act of oral copulation with another person who is under 14 years of age and more than 10 years younger.

120.   Civil liability for violation of California *Penal Code* § 288a exists because of the strong public policy directed at protecting minors from sexual exploitation.

121.   Darold Hecht, at the age of thirty four, participated in several acts of oral copulation with Jane Doe when she was thirteen years old. Such conduct is a violation of California *Penal Code* § 288a.

122.   As a direct, proximate and legal result of the acts of Darold Hecht, Jane Doe sustained serious and permanent injuries to her person.   Additionally, since being physically and mentally injured by registered sex offender Darold Hecht, Jane Doe has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, shame, difficulty trusting others, sleeplessness, and loss of enjoyment of life. Jane Doe has incurred, and will continue to incur, expenses for psychological treatment, therapy and counseling. As a result of her injuries, Jane Doe has been damaged in an amount subject to proof at the time of trial but not less than FIVE MILLION DOLLARS ($5,000,000.00).

123.   Jane Doe is informed and believes that the aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California *Civil Code* § 3294, entitling Jane Doe to punitive damages in an amount appropriate to punish and deter these defendants from ever again acting in such a reprehensible manner.

## NINTH CAUSE OF ACTION

(Unlawful Sexual Intercourse With Person Under 18: *Penal Code* § 261.5)

(Against Darold Hecht and Does 3 through 100)

124.   Jane Doe realleges and incorporates by reference the applicable allegations of paragraphs 1 through 123 of this complaint, inclusive.

125.   California *Penal Code* § 261.5  makes it unlawful for any person 21 years of age or older to engage in an act of unlawful sexual intercourse with a minor who is under 16 years of age.

126.   Civil liability for violation of California *Penal Code* § 261.5 exists because of the strong public policy directed at protecting minors from unlawful sexual intercourse.

127.   Darold Hecht, at the age of thirty four, participated in several acts of unlawful sexual intercourse with Jane Doe when she was thirteen years old. Such conduct is a violation of California *Penal Code* § 261.5.

128.   As a direct, proximate and legal result of the acts of Darold Hecht, Jane Doe sustained serious and permanent injuries to her person. Additionally, since being physically and mentally injured by registered sex offender Darold Hecht, Jane Doe has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace,

1   humiliation, shame, difficulty trusting others, sleeplessness, and loss of enjoyment of life.

2   Jane Doe has incurred, and will continue to incur, expenses for psychological treatment,

3   therapy and counseling. As a result of her injuries, Jane Doe has been damaged in an amount

4   subject to proof at the time of trial but not less than FIVE MILLION DOLLARS

5   ($5,000,000.00).

6

7   129.   Jane Doe is informed and believes that the aforesaid acts directed towards her were carried

8   out with a conscious disregard of her right to be free from such tortious behavior, such as to

9   constitute oppression, fraud or malice pursuant to California *Civil Code* § 3294, entitling

10   Jane Doe to punitive damages in an amount appropriate to punish and deter these defendants

11   from ever again acting in such a reprehensible manner.

12

13   <u>TENTH CAUSE OF ACTION</u>

14   (Intentional Infliction of Emotional Distress)

15   (Jane Doe Against Darold Hecht and Does 3 through 100)

16

17   130.   Jane Doe realleges and incorporates by reference the applicable allegations of paragraphs 1

18   through 129 of this complaint, inclusive.

19

20   131.   Darold Hecht's conduct toward Jane Doe, as described herein, was outrageous and extreme,

21   done with the intent to cause, or with reckless disregard of the probability of causing, Jane

22   Doe severe emotional distress.

23

24   132.   Sexual assault of a minor is outrageous conduct.  A reasonable person would not expect or

25   tolerate the sexual harassment, sexual molestation and sexual abuse of Jane Doe by Darold

26   Hecht.

27

28

133.  Darold Hecht's conduct described herein was intentional and malicious and done for the purposes of causes or with the substantial certainty that Jane Doe would suffer, humiliation, mental anguish and emotional and physical distress.

134.  As a result of the above described conduct, Jane Doe has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer and was prevented from and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; and has incurred and will continue to incur expenses for psychological treatment, therapy and counseling.  As a direct, proximate and legal result of defendants' conduct, Jane Doe has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, shame, difficulty trusting others, sleeplessness, and loss of enjoyment of life. Jane Doe has incurred, and will continue to incur, expenses for psychological treatment, therapy and counseling. As a result of her injuries, Jane Doe has been damaged in an amount subject to proof at the time of trial but not less than FIVE MILLION DOLLARS ($5,000,000.00).

135.  Jane Doe is informed and believes that the aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California *Civil Code* § 3294, entitling Jane Doe to punitive damages in an amount appropriate to punish and deter these defendants from ever again acting in such a reprehensible manner.

## ELEVENTH CAUSE OF ACTION

### (Intentionally Omitted)

## TWELFTH CAUSE OF ACTION

### (Violation of Civil Rights Under 42 U.S.C. § 1983)

### (Jane Doe Against Defendant Officer Barnes-Joshua and Does 3 through 100)

136. Jane Doe realleges and incorporates by reference the applicable allegations of paragraphs 1 through 135 of this complaint, inclusive and further alleges.

137. Jane Doe has a right to bodily security and integrity as secured by the Due Process Clause of the Fourteenth Amendment.

138. The Constitution, through the Fourteenth Amendment's substantive due process component, protects students who attend public school, like thirteen-year-old Jane Doe, from sexual abuse by employees hired by the school. 42 U.S.C. § 1983 authorizes suits to redress deprivations of any rights, privileges or immunities secured by the United States Constitution and laws.

139. The conduct of Officer Barnes-Joshua, carried out under color of state law, put Jane Doe at substantial risk of serious, immediate and proximate harm. Officer Barnes-Joshua permitted Darold Hecht - a registered sex offender with a history of sexually abusing young girls - to have unfettered daily access to the Cesar Chavez Middle School campus during a time when classes were in session and children, including Jane Doe, were on campus. Officer Barnes-Joshua failed to properly screen Darold Hecht before permitting him to roam the campus without supervision. Furthermore, Officer Barnes-Joshua failed to properly report Jane Doe's sexual abuse as required by California law after learning of the same thereby directly subjecting Jane Doe to continued sexual abuse by a man in the School District's employment.

140. Officer Barnes-Joshua knew or should have known that Darold Hecht was a registered sex offender with a history of sexually abusing young girls.

141. The risk of the Darold Hecht sexually abusing a student on Cesar Chavez Middle School's campus was known or obvious.  Yet, Officer Barnes-Joshua failed to provide adequate supervision of Darold Hecht and Jane Doe during the time Darold Hecht was having contact with the students of the school.

142. In allowing a registered sex offender onto the Cesar Chavez Middle School campus, Officer Barnes-Joshua acted recklessly and in conscious disregard for Jane Doe's safety.

143. The sexual abuse of Jane Doe would not have occurred but for the affirmative actions of Officer Barnes-Joshua of permitting Darold Hecht to have access to the students of the school despite his history of sexually abusing young girls.

144. The conduct of Officer Barnes-Joshua, when viewed in its totality, shocks the conscience.

145. Officer Barnes-Joshua were deliberately indifferent to Jane Doe's constitutional right to bodily security and, by her actions and inactions, increased the risk of harm to Jane Doe and created a substantial danger for Jane Doe.

146. Officer Barnes-Joshua's creation of an unreasonably unsafe and dangerous condition for Jane Doe was a direct, proximate and legal cause of damage and harm to Jane Doe.

147. Jane Doe's constitutional injury resulted from Officer Barnes-Joshua's failure to follow California's legal policies and procedures, specifically, but not limited to, the California Child Abuse and Neglect Reporting Act, and such failure demonstrates a deliberate indifferent to Jane Doe's right to bodily security.

148.   Jane Doe suffered damages as a result of Defendants' wrongful conduct, and she is entitled to recover damages from Defendants pursuant to 42 U.S.C. § 1983.  As a direct, proximate and legal result of Defendants' conduct, Jane Doe has been damaged in an amount subject to proof at the time of trial but not less than FIVE MILLION DOLLARS ($5,000,000.00).

### THIRTEENTH CAUSE OF ACTION

#### (Intentionally Omitted)

### FOURTEENTH CAUSE OF ACTION

#### (Battery)

#### (Jane Doe Against Defendants Darold Hecht and Does 3 through 100)

149.   Jane Doe realleges and incorporates by reference the applicable allegations of paragraphs 1 through 148 of this complaint, inclusive and further alleges.

150.   Registered sex offender Darold Hecht, while acting in the scope of his employment with Ledesma & Meyer, repeatedly initiated and engaged in harmful and offensive contact with intimate parts of thirteen-year old Jane Doe's body, including but not limited to Darold Hecht illegally tongue kissing Jane Doe; rubbing, groping and fondling Jane Doe's naked breasts, buttocks and vagina; digitally penetrating Jane Doe's vagina; ejaculating in Jane Doe's vagina and mouth; and engaging in vaginal intercourse with Jane Doe.

151.   Registered sex offender Darold Hecht did the aforementioned acts with the intent to cause a harmful or offensive contact with the intimate parts of thirteen-year old Jane Doe's body.

152.   Thirty-four year old Darold Hecht's harmful and offensive contacts with the intimate parts of thirteen-year old Jane Doe's body would severely shock and offend any reasonable sense of personal dignity and is completely unwarranted by relevant social practices.

153.   Because of Jane Doe's young age under the age of consent, Jane Doe was unable to, and did not, give meaningful consent to such acts.

154.   Ledesma & Meyer's employment of Darold Hecht and placement of registered sex offender Darold Hecht at the Cesar Chavez Middle School construction project predictably created the risk that Darold Hecht would commit intentional torts of the type alleged in this complaint, including sexual battery.   Everything about Ledesma & Meyer's reckless employment of Darold Hecht at Cesar Chavez Middle School during a time when students were on campus was expected to give rise to sexual emotions and exploitation. The battery - as pertaining to this particular registered sex offender defendant in this particular employment on a middle school campus - was engendered by such employment and arose from the employment for purposes of vicariously liability as the risk of sexual battery by Darold Hecht while on the job was highly foreseeable. Darold Hecht was the brother-in-law of Ledesma & Meyer's owner and was known by Ledesma & Meyer to be a registered sex offender who had a documented history of sexually abusing young girls.

155.   The connection between the Darold Hecht's employment duties for Ledesma & Meyer at Cesar Chavez Middle School  and Darold Hecht's aggressive and blatant targeting young Jane Doe was not so attenuated that it would be inequitable to require the Ledesma & Meyer to also to bear the costs of Jane Doe's injuries. Harmful or offensive contact with a female schoolchild is broadly incidental to Ledesma & Meyer's policy of hiring registered sex offenders like Darold Hecht and placing them to work at a middle school campus.

156.   As a direct, proximate and legal result of the acts of Darold Hecht, Jane Doe sustained serious and permanent injuries to her person, including, but not limited to, physical pain, emotional distress, humiliation, anxiety and sleeplessness.   Additionally, since being physically and mentally injured by registered sex offender Darold Hecht, Jane Doe has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress,

physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, shame, difficulty trusting others, sleeplessness, and loss of enjoyment of life. Jane Doe has incurred, and will continue to incur, expenses for psychological treatment, therapy and counseling. As a result of her injuries, Jane Doe has been damaged in an amount subject to proof at the time of trial but not less than FIVE MILLION DOLLARS ($5,000,000.00).

157. Jane Doe is informed and believes that the aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California *Civil Code* § 3294, entitling Jane Doe to punitive damages in an amount appropriate to punish and deter these defendants from ever again acting in such a reprehensible manner.

## PRAYER

WHEREFORE, plaintiffs pray for judgment as to all causes of action as follows:

### AS TO THE FIRST CAUSE OF ACTION FOR NEGLIGENCE PER SE

a. For judgment against defendants San Bernardino City Unified School District and Ionne Barnes-Joshua in the sum of not less than FIVE MILLION DOLLARS ($5,000,000.00);

b. For interest thereon according to proof;

c. For costs of suit incurred herein;

d. For such other relief as the Court deems just and proper.

### AS TO THE SECOND CAUSE OF ACTION FOR NEGLIGENT HIRING/RETENTION

a. For judgment against defendants San Bernardino City Unified School District and Ledesma & Meyer Construction Company, Inc., in the sum of not less than FIVE MILLION DOLLARS ($5,000,000.00);

1    b.    For exemplary or punitive damages in an amount sufficient to punish defendants and deter

2          defendants from ever again engaging in such reprehensible conduct;

3    c.    For interest thereon according to proof;

4    d.    For costs of suit incurred herein;

5    e.    For such other relief as the Court deems just and proper.

6

7    **AS TO THE THIRD CAUSE OF ACTION FOR NEGLIGENT SUPERVISION**

8    a.    For judgment against defendants San Bernardino City Unified School District and Ledesma

9          & Meyer Construction Company, Inc., in the sum of not less than   FIVE MILLION

10         DOLLARS ($5,000,000.00);

11    b.    For exemplary or punitive damages in an amount sufficient to punish defendants and deter

12         defendants from ever again engaging in such reprehensible conduct;

13    c.    For interest thereon according to proof;

14    d.    For costs of suit incurred herein;

15    e.    For such other relief as the Court deems just and proper.

16

17    **AS TO THE FOURTH CAUSE OF ACTION FOR NEGLIGENCE**

18    a.    For judgment against defendants San Bernardino City Unified School District, Ledesma &

19         Meyer Construction Company, Inc., Joseph Ledesma, and Kris Meyer in the sum of not less

20         than  FIVE MILLION DOLLARS ($5,000,000.00);

21    b.    For interest thereon according to proof;

22    c.    For costs of suit incurred herein;

23    d.    For such other relief as the Court deems just and proper.

24

25    **AS TO THE FIFTH CAUSE OF ACTION FOR VIOLATION OF *EDUCATION CODE***

26    **§44807**

27    a.    For judgment against defendant San Bernardino City Unified School District in the sum of

28         not less than  FIVE MILLION DOLLARS ($5,000,000.00);

1    b.    For interest thereon according to proof;

2    c.    For costs of suit incurred herein;

3    d.    For such other relief as the Court deems just and proper.

4

5    **AS TO THE SIXTH CAUSE OF ACTION FOR VIOLATION OF *EDUCATION CODE* §§**

6    **45125.1 and 45125.2**

7    a.    For judgment against defendant San Bernardino City Unified School District in the sum of

8          not less than  FIVE MILLION DOLLARS ($5,000,000.00);

9    b.    For interest thereon according to proof;

10   c.    For costs of suit incurred herein;

11   d.    For such other relief as the Court deems just and proper.

12

13   **AS TO THE SEVENTH CAUSE OF ACTION FOR SEXUAL BATTERY - *CIVIL CODE* §**

14   **1708.5**

15   a.    For judgment against defendant Darold Hecht in the sum of not less than FIVE MILLION

16         DOLLARS ($5,000,000.00);

17   b.    For exemplary or punitive damages in an amount sufficient to punish defendants and deter

18         defendants from ever again engaging in such reprehensible conduct;

19   c.    For interest thereon according to proof;

20   d.    For costs of suit incurred herein;

21   e.    For such other relief as the Court deems just and proper.

22

23   **AS TO THE EIGHTH CAUSE OF ACTION FOR SEXUAL ABUSE OF A MINOR - *PENAL***

24   ***CODE* § 288a**

25   a.    For judgment against defendant Darold Hecht in the sum of not less than  FIVE MILLION

26         DOLLARS ($5,000,000.00)

27   b.    For exemplary or punitive damages in an amount sufficient to punish defendants and deter

28         defendants from ever again engaging in such reprehensible conduct;

1   c.    For interest thereon according to proof;

2   d.    For costs of suit incurred herein;

3   e.    For such other relief as the Court deems just and proper.

4

5   **AS TO THE NINTH CAUSE OF ACTION FOR UNLAWFUL SEXUAL INTERCOURSE**

6   **WITH A PERSON UNDER 18 - *PENAL CODE* § 261.5**

7   a.    For judgment against defendant Darold Hecht in the sum of not less than  FIVE MILLION

8         DOLLARS ($5,000,000.00);

9   b.    For exemplary or punitive damages in an amount sufficient to punish defendants and deter

10        defendants from ever again engaging in such reprehensible conduct;

11   c.    For interest thereon according to proof;

12   d.    For costs of suit incurred herein;

13   e.    For such other relief as the Court deems just and proper.

14

15   **AS TO THE TENTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF**

16   **EMOTIONAL DISTRESS**

17   a.    For judgment against defendant Darold Hecht in the sum of not less than  FIVE MILLION

18        DOLLARS ($5,000,000.00);

19   b.    For exemplary or punitive damages in an amount sufficient to punish defendants and deter

20        defendants from ever again engaging in such reprehensible conduct;

21   c.    For interest thereon according to proof;

22   d.    For costs of suit incurred herein;

23   e.    For such other relief as the Court deems just and proper.

24

25   **AS TO THE TWELFTH CAUSE OF ACTION FOR VIOLATION OF CIVIL RIGHTS**

26   **UNDER 42 U.S.C. § 1983**

27   a.    For judgment against defendant Ionne Barnes-Joshua in the sum of not less than FIVE

28        MILLION DOLLARS ($5,000,000.00);

1    b.    For recovery of reasonable attorney fees and expert fees pursuant to 42. U.S.C. § 1988;

2    c.    For interest thereon according to proof;

3    d.    For costs of suit incurred herein;

4    e.    For such other relief as the Court deems just and proper.

5

6    **AS TO THE FOURTEENTH CAUSE OF ACTION FOR BATTERY**

7    a.    For judgment against defendants Darold Hecht in the sum of not less than FIVE MILLION

8           DOLLARS ($5,000,000.00);

9    b.    For exemplary or punitive damages in an amount sufficient to punish defendants and deter

10         defendants from ever again engaging in such reprehensible conduct;

11    c.    For recovery of reasonable attorney fees and expert fees pursuant to *Civil Code* § 52.4(a);

12    d.    For interest thereon according to proof;

13    e.    For costs of suit incurred herein;

14    f.    For such other relief as the Court deems just and proper.

15

16    Dated: September 12, 2011        URTNOWSKI & ASSOCIATES, P.C.

17

18

19

20    By: _____

                J. Brian Urtnowski

21               Lisamarie Graham
               Attorneys for plaintiffs Jane JS Doe,
               Bruce S. and Carrie S.

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2  STATE OF CALIFORNIA  )
                         ) ss
3  COUNTY OF ORANGE     )

4       I am employed in the County of Orange, State of California. I am over the age of 18 and not
   a party to the within action; my business address is as follows: 18301 Von Karman Ave., Suite 200,
5  Irvine, California 92612. On September 12, 2011, I caused to be served the foregoing document(s)
   described as:

6

7                         **SECOND AMENDED COMPLAINT**

   to be served on the following interested parties: [X] by placing  [ ] the original and/or [X] true and
8  correct copies thereof enclosed in a sealed envelope addressed as follows:

9  [X]    **By US Mail**
   Dennis G. Popka                          Counsel for SB City Unified School District and
10 Orrock Popka Fortino & Brislin           Ionne Barnes-Joshua
   1533 Spruce Street, Suite 100            (951) 683-6014 telephone
11 Riverside, California 92507              (951) 683-0314 facsimile

12 Douglas Mann                             Counsel for Ledesma & Meyer Construction
   Walker & Mann LLP                        Company, Inc.
13 10832 Laurel Street, Suite 204           (909) 989-3200 telephone
   Rancho Cucamonga, California 91730       (909) 945-5970 facsimile

14
   Dustin Woods                             Counsel for Ledesma & Meyer Construction
15 Lewis Brisbois Brisgaard & Smith         Company, Inc.
   650 Town Center Drive, Suite 1400        (714) 545-9200 telephone
16 Costa Mesa, California 92626             (714) 850-1030 facsimile

17 Darold Hecht                             *In Propria Persona*
   7156 Elmhurst Ave                        (909) 980-6221 telephone
18 Alta Loma, California 91701

19 Darold Hecht, AA4142                     *In Propria Persona*
   Sierra Conservation Camp (SCC)
20 5100 O'Byrnes Ferry Road
   P.O. Box 497
21 Jamestown, California 95327-0497

22 [X]    I am "readily familiar" with the firm's practice of collection and processing correspondence
   for mailing. Under that practice it would be deposited in the U.S. Postage Service on that same day
23 with postage thereon fully prepaid at Irvine, California, in the ordinary course of business.  I am
   aware that on motion of the party served, service is presumed invalid if postal cancellation date or
24 postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

25       Executed on September 12, 2011, at Irvine, California.

26 [X]    I declare under penalty of perjury under the laws of the State of California that the foregoing
   is true and correct.

27

28                                         Stephanie Quillen

                         Second Amended Complaint
                                  50